UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RICHARD GREENLEE,                    )
                                     )
            Petitioner,              )
                                     )
      vs.                            )          Case No. 4:13-CV-1922 (CEJ)
                                     )
IAN WALLACE,                         )
                                     )
            Respondent.              )

**MEMORANDUM**

This matter is before the Court on the petition of Richard Greenlee for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

I.    **Procedural Background**

Petitioner Richard Greenlee is presently incarcerated at the Southeast Correctional Center pursuant to the sentence and judgment of the Circuit Court of St. Francois County. On August 27, 2009, a jury convicted petitioner of one count of first-degree statutory sodomy in violation of Mo.Rev.Stat. § 566.062, for committing deviate sexual intercourse with a person under the age of 12. The trial court sentenced petitioner as a prior offender to a 99-year term of imprisonment. Resp. Ex. A. at 73-74. Petitioner appealed his conviction and, on December 21, 2010, the Missouri Court of Appeals affirmed.  State v. Greenlee, 327 S.W.3d 602 (Mo. Ct. App. 2010).  Resp. Ex. D.

Petitioner filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which the post-conviction court denied without an evidentiary hearing.  Resp. Ex. E at 42-45.  On August 14, 2012, the Missouri Court of Appeals affirmed the denial of post-conviction relief. Greenlee v. State, 384 S.W.3d 712 (Mo. Ct. App. 2012). Petitioner timely filed a petition for relief pursuant

to 28 U.S.C. § 2254, on September 27, 2013, which he amended on September 28, 2013.

## II.    **Factual Background**

On December 22, 2006, petitioner Richard Greenlee and his girlfriend Maria Page stayed overnight with D.B., her boyfriend, and her two daughters — the four-year-old victim   H.S., and a 10-month-old infant. H.S. slept on the living room couch because Ms. Page and petitioner were staying in her bedroom.

At about 5:30 in the morning of December 23rd, the victim's mother got up to get a bottle for the infant.  As she passed the living room, she saw petitioner leaning over H.S.  She testified that she saw him take his hand out of H.S.'s underwear, put his finger in his mouth, and then put his hand back in H.S.'s underwear.  State v. Greenlee, 327 S.W.3d 602, 608 (Mo. Ct. App. 2010).  She roused everyone and demanded that Ms. Page and petitioner leave.  Shortly before leaving the house that morning Ms. Page asked H.S. what happened, and she answered that petitioner "touched her pee-pee."  Resp. Ex. L. at 385.

Petitioner met with Detective Norma Marberry on January 27, 2007. Id. at 242. He provided a written statement in which he said that he got up early on December 23rd to use the bathroom. He saw the victim asleep on the couch and thought she looked cold so he decided to carry her back to her bed. When he tried to pick her up, he noticed that she had her hands in her underwear. As he tried to lift her, she brushed her right hand on his face, near his mouth. He "felt something wet on his face . . . and wiped it . . . and found that [he] had drooled in [his] sleep." By then, the victim had put her hands in her underwear again. Id. at 254.

A jury trial held on June 26, 2008, resulted in a mistrial. A second trial held on August 27, 2009, resulted in conviction. After trial, the alternate juror told defense counsel that the jurors began talking about the case during the recess, made statements indicating bias, and complained about being hungry. Defense counsel filed the alternate juror's affidavit with his motion for new trial. Resp. Ex. A at 84-85. On October 16, 2009, the trial court held an evidentiary hearing on these claims. Resp. Ex. L at 436-77. Three jurors appeared and were questioned by the prosecutor, defense counsel, and the court. At the conclusion of the hearing, the trial court overruled the motion for new trial and proceeded to sentencing.

Additional facts will be included as necessary to address petitioner's claims.

### III.   **Legal Standards**

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton ("Payton"), 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the

governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" <u>Brown v. Luebbers</u>, 371 F.3d 458, 461 (8th Cir. 2004) (<u>citing</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." <u>Id.</u>

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," <u>Payton</u>, 544 U.S. at 141; <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u> at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." <u>Carter v. Kemna</u>, 255 F.3d 589, 592 (8th Cir. 2001) (<u>quoting</u> <u>Williams</u>, 529 U.S. at 410-11).

To preserve a claim for relief, "a habeas petitioner must have raised both the factual and legal bases" of his claim to the state court, and afforded that court a fair opportunity to review its merits. <u>Abdi v. Hatch</u>, 450 F.3d 334, 338 (8th Cir. 2006) (citations omitted). Where a claim is defaulted, a federal habeas court will consider it only if the petitioner can establish either cause for the default and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. <u>Id.</u> To establish "cause" for the default, a petitioner generally must "show that some objective factor external to the defense impeded counsel's

efforts to comply with the State's procedural rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). To establish prejudice, the petitioner "must show that the errors of which he complains 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" <u>Ivy v. Caspari</u>, 173 F.3d 1136, 1141 (8th Cir. 1999) (<u>quoting</u> <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)) (emphasis omitted). To fall within the fundamental-miscarriage-of-justice exception, "a habeas petitioner [must] present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." <u>Murphy v. King</u>, 652 F.3d 845, 850 (8th Cir. 2011) (citation omitted).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). With respect to the first <u>Strickland</u> prong, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. <u>Id.</u> at 689. The reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions." <u>Abernathy v. Hobbs</u>, 748 F.3d 813, 816 (8th Cir. 2014) (citation omitted). In order to establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694; <u>see also</u> <u>Paulson v. Newton Corr. Facility, Warden</u>, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted) ("Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome.")

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. Harrington v. Richter, [562 U.S. 86, 101] (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102].

Id. at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

IV.     **Discussion**

**Ground 1: Pretrial Publicity and Prosecutorial Misconduct**

In his first claim for relief, petitioner claims that the trial court erred in failing to dismiss the charges against him for prosecutorial misconduct based on pretrial publicity.

Prior to the second trial, defense counsel learned that the prosecutor had discussed petitioner's case on a local radio show, that the victim's mother worked at the radio station, and that there had been newspaper articles about the upcoming trial. On the day of trial, defense counsel filed a motion to dismiss the

charges. Resp. Ex. A at 17 (docket entry) and 44-45 (motion). At a hearing on the motion, the prosecutor stated that she did a monthly broadcast in which she identified upcoming trials, the charges, and the ranges of punishment. Petitioner's case had been discussed in this fashion a month or two before trial. With respect to the newspaper articles, defense counsel stated that the newspaper article was "about the case itself," but did not further identify its contents. The prosecutor stated that she played no role in the newspaper articles. The trial court noted that the newspaper's publications regarding trials could not be attributed to the prosecution. The court denied the motion to dismiss and ruled that the impact of the newspaper articles and broadcast on the potential jurors would be addressed during voir dire. Resp. Ex. L at 8-9. During voir dire, two jurors stated that they had heard of the case (although not through the radio show) and both were struck for cause. Id. at 78-79.

Criminal defendants have a right to trial by an impartial jury. Irvin v. Dowd, 366 U.S. 717, 722 (1961). "[I]n most cases involving due process deprivations [the courts] require a showing of identifiable prejudice to the accused. Nevertheless, at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process." Sheppard v. Maxwell, 384 U.S. 333, 352 (1966). In cases involving extraordinary pretrial publicity or widespread public hostility toward the defendant, the trial court should disregard the jurors' assertions of impartiality. See Irvin, 366 U.S. at 727 (the "pattern of deep and bitter prejudice" present throughout the community was reflected during the voir dire examination); Sheppard, 384 U.S. at 351-52 ("[T]he burden of showing essential unfairness as a demonstrable reality need not be

undertaken when television has exposed the community repeatedly and in depth to spectacle[.]") (internal citations and quotations omitted).

Here, the pretrial publicity consisted of a newspaper article and a radio show, and thus did not rise to the level of "extraordinary." See Pruett v. Norris, 153 F.3d 579, 586 (8th Cir. 1998) (Pruett's trial did not have "circus atmosphere" of the trial in Sheppard, the trial was held eleven months after the original crime, and the media coverage was largely unexceptional). In the absence of extraordinary pretrial publicity, a habeas petitioner must show that the jurors actually seated "had such fixed opinions that they could not judge impartially the guilt of the defendant." Id. at 587 (quoting Patton v. Yount, 467 U.S. 1025, 1035 (1984)). As the Missouri Court of Appeals noted, petitioner failed to demonstrate that the jury pool was tainted by pretrial publicity, much less that the seated jurors had "such fixed opinions" that they could not be impartial. Greenlee, 327 S.W.3d at 609. The Missouri courts identified the correct legal standards and made factual findings supported by the evidence. Petitioner cannot establish that he is entitled to relief based on his pretrial-publicity claim.

Petitioner also asserts that the prosecutor "collaborated" with the media to affect the outcome of his trial in violation of his due process rights. He argues that the state courts' determination that no due process violation occurred is an unreasonable application of Sheppard v. Maxwell. Petitioner argues that, just as in Sheppard, the prosecutor's conduct in this case created a probability that prejudice would result. The comparison is inapt. In Sheppard, "virulent publicity" about the murder of Sheppard's wife "made the case notorious." 384 U.S. at 354. To cite a few of the many examples, the press followed the coroner and defendant during a

reenactment of the murder. The three-day-long inquest was broadcast live from a school gymnasium. Id. at 338-42. The names and addresses of venire members were published in the local papers before jury selection and they received phone calls and letters from the public regarding the case. Id. at 354, 342-45. By contrast, in the present case, the prosecutor spoke about the case on a local radio show that no member of the venire recalled hearing. Setting aside the propriety of the prosecutor's appearance on the radio show, the circumstances here do not rise to the level that prejudice must be presumed. And, as discussed above, petitioner is unable to show that he was prejudiced in that both venire members with prior awareness of the case were struck. Petitioner's first ground for relief will be denied.

### **Ground 2: Denial of Due Process and Speedy Trial Rights**

Petitioner was charged on May 21, 2007, and filed a speedy trial motion on June 5, 2007. His trial was originally set for December 12, 2007. On December 6, 2007, the prosecution filed a substitute information and a motion for a continuance. Resp. Ex. A at 6. On December 7, 2007, petitioner made an oral motion for continuance, which the trial court granted, and trial was reset to June 26, 2008. That trial resulted in a hung jury. A new trial was set for March 11 and 12, 2009, however, on January 21, 2009, the trial court notified the parties of a scheduling conflict, and trial was reset for August 27, 2009. Id. at 12, 14. On the day of trial, defense counsel filed a motion to dismiss based upon the State's failure to grant a speedy trial. Resp. Ex. A at 41-43. The trial court denied the motion after hearing argument. Resp. Ex. L at 13.

"The Sixth Amendment guarantees a criminal defendant the right to a speedy trial." United States v. Brown, 325 F.3d 1032, 1034 (8th Cir. 2003) (citation

omitted). In order to determine whether the right to a speedy trial has been violated, courts balance four factors: (1) length of delay; (2) reasons for the delay; (3) defendant's assertion of the right; and (4) prejudice. <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972). None of the four factors "is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial [and] courts must still engage in a difficult and sensitive balancing process." <u>Id.</u> at 533. The Supreme Court has identified three separate ways that post-charge delay may prejudice a defendant: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence. <u>Doggett v. United States</u>, 505 U.S. 647, 654 (1992) (alterations in original; citation omitted). "Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." <u>Id.</u> (internal quotation and citation omitted).

The Missouri Court of Appeals correctly identified and analyzed the <u>Barker</u> factors. First, the court found that the delays of 13 months before the first trial and 14 months between the first and second trial were presumptively prejudicial. <u>Greenlee</u>, 327 S.W.3d at 611. The court attributed the first delay to petitioner because he requested a continuance. Petitioner argued that he had been forced to move for a continuance because the State: (1) filed the substitute information less than a week before trial; (2) failed to respond to repeated defense motions to produce the victim's father for deposition; and (3) refused to produce lab reports and exculpatory evidence. Resp. Ex. B at 27 (appellant's brief); Resp. Ex. A at 41-43 (motion to dismiss). The appellate court rejected this argument, stating that

petitioner failed to present any evidence that the State had not responded to his requests for information. <u>Greenlee</u>, 327 S.W.3d at 612. The court weighed the second delay against the State but noted that delays due to "court scheduling issues are not weighed as heavily as those that are deliberately intended to hamper the defense." <u>Id</u>. The third factor weighed in petitioner's favor because he asserted his right to a speedy trial less than a week after he was charged. <u>Id.</u>

Regarding the fourth factor, petitioner asserted that he suffered oppressive pretrial incarceration because he was cold and unable to sleep, he became deeply depressed, and he was badly beaten by another inmate and became afraid for his safety. The Court of Appeals rejected these allegations as unsupported by any evidence in the record. <u>Id.</u> at 613. Petitioner also argued that his defense was impaired by the delay because two physicians who examined the victim were unavailable to testify at trial. The court rejected this claim because petitioner did not state when the witnesses became unavailable or what their testimony would have been. In addition, the defense introduced testimony from one examining physician at trial and the testimony of the missing witnesses was likely cumulative. <u>See</u> <u>id.</u> (prejudice does not result from the unavailability of witnesses whose testimony is cumulative of other evidence presented at trial). The court concluded that the <u>Barker</u> factors weighed in favor of the State and rejected petitioner's claim that his right to a speedy trial was violated. <u>Id.</u>

The state court applied the correct standard, performed a thorough analysis, and reasonably interpreted the facts. "Because the <u>Barker</u> standard is a general, multi-factor standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Taylor v. Roper</u>, 561 F.3d 859,

863 (8th Cir. 2009) (quotation and citations omitted). Petitioner cannot show that the state court's decision was an unreasonable application of <u>Barker</u> and his second ground for relief will be denied.

### **Ground 3: Coerced Verdict**

In Ground 3, petitioner contends that the trial court improperly compressed a two-day trial into one day and coerced the jury to deliver a verdict by refusing to provide an evening meal and instructing the jurors to "work hard." Defense counsel made no objections at trial and the Missouri Court of Appeals found that petitioner failed to preserve this claim for appellate review, a finding that petitioner does not challenge here. On federal habeas review, this Court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing State court analyzed that claim for plain error." <u>Clark v. Bertsch</u>, 780 F.3d 873, 874 (8th Cir. 2015) (applying the rule set out in <u>Hayes v. Lockhart</u>, 766 F.2d 1247 (8th Cir. 1985)). Before the Court can review the merits of this claim, petitioner must show cause for the default and actual prejudice resulting from the alleged constitutional violation, or that a fundamental miscarriage of justice would occur if the claim is not addressed. <u>Jamerson v. Wallace</u>, No. 4:14CV241 CDP, 2016 WL 880416, at *3 (E.D. Mo. Mar. 8, 2016) (<u>citing</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). Petitioner does not argue that he can meet either standard for lifting the procedural bar to review of the merits of this claim and his third ground for relief will be denied.

### **Ground 4: Sufficiency of the Evidence**

Petitioner argues that there was insufficient proof to sustain his conviction.

In reviewing the sufficiency of the evidence to support a criminal conviction, the court asks whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In applying this standard, the scope of review "is extremely limited. . . We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution." Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003) (citations omitted). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S. Ct. 2, 3 (2011). On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." Id. (internal quotation and citation omitted).

Petitioner was convicted of first-degree statutory sodomy, which is defined as "deviate sexual intercourse with another person who is less than fourteen years old." Mo.Rev.Stat. § 566.062. As relevant to this matter, "deviate sexual intercourse" is defined as: "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person . . . done for the purpose of arousing or gratifying the sexual desire of any person." Mo.Rev.Stat. § 566.010(1). Petitioner argues there was insufficient evidence to establish that he (1) acted for the purpose of arousing or gratifying sexual desire or (2) had contact with the victim's genitals.

The victim's mother testified at trial that when she first saw petitioner he was leaning over her daughter with his hand in her underwear. She then saw him move his hand toward his mouth, lick his finger, and put his hand back in her daughter's underwear. Resp. Ex. L at 120-21. The victim testified that petitioner touched her "in the bad spot." Id. at 205. Nancy Weiss, an investigator with the Children's Division, testified that the victim told her that petitioner "got his thumb wet and got her pee-pee wet." Id. at 216-17. The victim made a similar statement in a videotaped forensic interview shown to the jury. Id. at 316, 322, 326, 333. Finally, an analysis done of DNA found in the victim's underwear showed the presence of male DNA consistent with petitioner's profile. Id. at 286-87.

The Missouri Court of Appeals found that the evidence supported a finding that petitioner acted with the purpose of arousing or gratifying sexual desire. Greenlee, 327 S.W.3d at 618. "Greenlee's conduct indicates his intent was not innocent. The sexual nature of the act itself . . ., along with the fact that Greenlee was alone with Victim in the middle of the night, provide a sufficient basis for the jury to infer that the contact was done for the purpose of arousing or gratifying Greenlee's sexual desire." Id. at 618-19. The same evidence also is sufficient to support a finding that he had contact with the victim's genitals. Id. at 619. These findings by the state court are not objectively unreasonable. To the extent that petitioner challenges the credibility of the victim and her mother, this is a matter which is left to the jury to resolve and which cannot be disturbed by this Court. See Robinson v. LaFleur, 225 F.3d 950, 954 (8th Cir. 2000) ("[I]n reviewing the sufficiency of the evidence, we are not permitted to conduct our own inquiry into

witness credibility."). Petitioner has failed to establish that the state court decision was objectively unreasonable and his fourth claim for relief must be denied.

## Ground 5: Failure to Instruct on Lesser-Included Offense

Petitioner argues that his rights to due process and a fundamentally fair trial were violated by the trial court's refusal to instruct the jury on the offense of first-degree sexual misconduct. The Missouri Court of Appeals denied this claim on state law grounds, finding that the proposed instruction required an additional element — lack of consent — not included in the first-degree statutory sodomy offense of which he was convicted. See Greenlee, 327 S.W.3d at 621-22.

The United States Supreme Court has never held that there is a constitutional requirement that lesser-included offense instructions be given in noncapital cases. Carney v. Fabian, 487 F.3d 1094, 1097 (8th Cir. 2007) (citations omitted). Thus, the trial court's refusal to give petitioner's proffered instruction cannot be considered to be contrary to established federal law. Id. at n.5. Petitioner's fifth claim for relief will be denied.

## Grounds 6 and 7: Ineffective Assistance of Appellate Counsel

Petitioner raises two claims that his direct appeal counsel rendered ineffective assistance by inadequately presenting two arguments challenging the trial court's decisions excluding an expert witness and limiting cross examination of the mother about her history of sexual abuse.

A claim of ineffective assistance of direct appeal counsel is reviewed under Strickland v. Washington, 466 U.S. 668 (1984). A petitioner must show that counsel's performance was objectively unreasonable, and that there is a reasonable probability that the outcome of his appeal would have been different if counsel had

raised the claim. <u>Chambers v. Bowersox</u>, 157 F.3d 560, 566 (8th Cir. 1998). When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain an ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims. <u>Link v. Luebbers</u>, 469 F.3d 1197, 1205 (8th Cir. 2006) (<u>citing</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000)). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Id.</u> (<u>quoting</u> <u>Smith</u>, 528 U.S. at 288). To overcome the presumption, petitioner must present evidence that appellate counsel's failure to raise a claim was not an exercise of sound appellate strategy. <u>Collins v. Dormire</u>, 240 F.3d 724, 727 (8th Cir. 2001).

The trial court excluded the testimony of a defense expert proffered to support petitioner's theory that the mother's own sexual abuse history caused her to misinterpret what she saw when she found petitioner standing over her daughter.  The court also sustained the State's motion in limine to bar defense counsel from cross-examining the mother about her sexual abuse history. Appellate counsel attempted to challenge both rulings on direct appeal. However, the Missouri Court of Appeals declined to consider them based on deficiencies in the presentation.[1]

Petitioner presented his claim that he received ineffective assistance of appellate counsel in post-conviction proceedings. The motion court held that permitting the proffered expert testimony would have "inject[ed] into the case the notion the child did not experience the events at all, but rather, the child's mother

---

[1] With respect to the exclusion of the expert's testimony, the appellate court deemed the point abandoned because there was a discrepancy between the Point on Appeal and the argument. <u>Greenlee</u>, 327 S.W.3d at 614. With respect to cross-examination of the mother, the appellate court declined to review the claim because appellate counsel neglected to include the State's motion in limine in the appellate record. <u>Id.</u> at 614-15.

fabricated them because of some trauma . . . in her own life." Resp. Ex. E at 42. Furthermore, the expert "purport[ed] to come to that opinion without having combed over records she admitted were vital to her determination and certainly without coming to the conclusion the victim's mother suffered sufficient trauma to put her in a position to relive her past through the child."[2] Id. at 43. The motion court noted that the determination of whether an expert is qualified to offer testimony is committed to the trial court's discretion. Accordingly, petitioner could not establish that the outcome of his appeal would have been different, no matter how appellate counsel presented the claim. Id. The motion court also rejected petitioner's claim regarding the limits imposed on cross-examination of the mother. "The victim's mother's own past could not be used . . . to impeach the child's or her own recounting of events, absent some showing she suffered sufficient trauma to affect her ability to reason and sufficient to color and influence the child's report." Id. at 44.

Petitioner argues that if the claims were properly presented on direct appeal, the court would have found that the trial court abused its discretion. But, the post-conviction appeal court expressly stated otherwise, stating:

> The two rulings for which movant seeks review were discretionary calls. We discern no abuse of discretion on the part of the trial court in excluding the proffered expert testimony when the expert was offering only speculative profile testimony about the victim's mother . . . Likewise, we can find no abuse of discretion when the trial court limited cross-examination to prevent a fishing expedition into collateral matters. In sum, we would not have reversed had the two claims been properly raised on appeal.

---

[2] Defense counsel deposed the victim's mother but did not provide the transcript to the defense expert. Resp. Ex. K at 6-7. In addition, he never asked the mother whether she suffered from flashbacks or other symptoms of post-traumatic stress disorder. Resp. Ex. C at 37-38.

Resp. Ex. H at 3-4. Thus, petitioner cannot establish that he was prejudiced by appellate counsel's performance. The decisions of the state courts were not contrary to or an unreasonable application of Strickland and petitioner is not entitled to relief on his claims that he received ineffective assistance of appellate counsel.

### Grounds 8-16: Ineffective Assistance of Counsel

Petitioner presents nine claims for ineffective assistance of counsel. As he acknowledges, these claims are procedurally defaulted because he failed to raise them in post-conviction proceedings. He argues that he can establish cause for this default under Martinez v. Ryan, 132 S. Ct. 1309 (2012).

In Martinez, the United States Supreme Court held that the ineffective assistance of a petitioner's post-conviction counsel may establish cause for failure properly to present an ineffective assistance of trial counsel claim in state court. Martinez, 132 S. Ct. at 1320. When, as in Missouri,

> a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . . where appointed counsel in the initial-review collateral proceeding . . . was ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984).

Id. at 1318. Martinez also requires the petitioner to show "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id.

The Eighth Circuit has stated: "A federal court is allowed to find 'cause,' thereby excusing a habeas petitioner's procedural default . . . , where (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause'

consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" Dansby v. Hobbs, 766 F.3d 809, 834 (8th Cir. 2014) (citing Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013)).

The Court does not believe that petitioner can establish that post-conviction counsel's performance was deficient. Petitioner raised three claims in a *pro se* post-conviction motion: (1) he was denied a speedy trial; (2) his expert witness was improperly excluded; and (3) the jurors were all employed by the state or county. Resp. Ex. E at 5. He did not raise any of the ineffective assistance claims he asserts here. Appointed post-conviction counsel filed an amended motion that extensively briefed the two claims of ineffective assistance of appellate counsel addressed above. Resp. Ex. E at 13-41. If, as with appellate counsel, "one of [post-conviction] counsel's important duties is to focus on those arguments that are most likely to succeed, [then] counsel will not be held to be ineffective for failure to raise every conceivable issue." Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006) "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)). Nonetheless, the Court examines petitioner's ineffective-assistance claims to determine whether they are "substantial."

**Ground 8**: Petitioner contends that trial counsel was ineffective for failing to remove Juror Number 7 either through a motion to strike for cause or a peremptory strike. During voir dire, Juror Number 7 stated that she had a friend whose two

children were sexually abused and that trial in the matter was set in the near future. Resp. Ex. L at 61. She also stated, however, that she would be able to set aside her feelings or attitudes and be fair and impartial. Id. at 61-62. After trial, the alternate juror stated by affidavit that she overheard Juror Number 7 say, "I can't believe they left me on the jury. I told them my best friend's kids had been the victims of sexual abuse and that I had to go through that with her." Resp. Ex. A at 84-85. At the post-trial hearing on these matters, Juror Number 7 acknowledged making a statement similar to the one reported in the affidavit. She explained that she and other jurors expressed surprise at being selected because they believed that panel members who answered questions during voir dire would not be chosen to serve. She stated that the friend at issue was not her best friend and that she was truthful when she stated during voir dire that she could be fair and impartial. Furthermore, she believed that her verdict was untainted by her friend's experience. Resp. Ex. L at 450-60.

To prevail on a claim of ineffective assistance of counsel based on the failure to strike a biased juror, a federal habeas petitioner must show that the juror was actually biased against the petitioner. Goeders v. Hundley, 59 F.3d 73, 75 (8th Cir. 1995). And, "[a] demonstration of actual bias requires an impermissible affirmative statement; an "equivocal" statement is insufficient. Williams v. Norris, 612 F.3d 941, 954-55 (8th Cir. 2010). Here, Juror Number 7's statements are, at most, "equivocal" and petitioner has failed to establish that she was actually biased. In addition, there is no reason to conclude that the trial court would have granted a motion to strike Juror Number 7 for cause, because the court denied all four of

defense counsel's motions to strike for cause, including a panel member whose daughter was a victim of a pending "sex case." Resp. Ex. L at 80-82, 75-76.

Petitioner's claim that counsel should have used a peremptory strike to remove Juror Number 7 also fails. Counsel stated at the post-trial hearing that he could not afford to use a peremptory strike to remove Juror Number 7. Resp. Ex. L at 438 ("we had other peremptory challenges we had to make.") Counsel's decision regarding the best use of peremptory challenges is a matter of trial strategy. See Cody v. Steele, No. 4:09 CV 301 ERW/DDN, 2012 WL 1025067, at *14 (E.D. Mo. Feb. 13, 2012), report and recommendation adopted as modified sub nom. Cody v. Wallace, No. 4:09CV00301 ERW, 2012 WL 1025023 (E.D. Mo. Mar. 26, 2012) (trial counsel's decision regarding peremptory strikes "was, in the absence of evidence to the contrary, part of a reasonable trial strategy"). Petitioner has failed to establish that he has a substantial claim for ineffective assistance of counsel.

**Ground 9:** Petitioner asserts that trial counsel was ineffective for failing to obtain and present evidence of the prosecutor's statements about the case during the radio show. As discussed above, there is no evidence that any of the jurors heard the radio show; thus, the prosecutor's statements are irrelevant. Petitioner has not made a substantial claim that he was prejudiced by counsel's performance.

**Ground 10:** Petitioner contends that trial counsel erred by failing to object to the pace of the trial. As noted above, he argued on appeal that the trial court improperly compressed a two-day trial into a single day. The appellate court reviewed the claim for plain error because no objection was raised at trial. Petitioner argues here that counsel's failure to object at trial, and thereby preserve the error for appellate review, constitutes ineffective assistance.

According to the record, the lawyers were given the option of choosing a one-day trial setting in the short term or a two-day setting at a later date, and they chose the one-day setting. Resp. Ex. L at 459 (trial court stating that the attorneys selected the one-day setting). Given petitioner's purported anxiety about the conditions of his pretrial detention, counsel's decision for an earlier trial date was appropriate. And, having made that decision, he could not then object to the compressed schedule. Petitioner has not presented a substantial claim of ineffective assistance.

**Ground 11:** Petitioner contends that trial counsel rendered ineffective assistance by failing to object to or move to exclude testimony by police detective Norma Marberry that petitioner did not appear at the station for an interview until more than a month after the incident. The following exchange occurred during direct examination:

Q:   Do you know why it was that long before you were able to interview Mr. Greenlee?

A:   I tried to schedule an interview with Mr. Greenlee, and he had the flu or somebody in his family had the flu, and Mr. Greenlee didn't drive. But he couldn't come to the police department to be interviewed. And it just took us that long to get the schedule.

Q:   Do you know how many times approximately you asked Mr. Greenlee to come to the police station and he had a reason he couldn't come?

A:   It seems like three times.

Q:   Do you recall specifically whether or not you told Mr. Greenlee what you wanted to talk to him about?

A:   I believe Mr. Greenlee was aware.

Q:   Okay.

A:   Because he knew of the accusations that morning.

At this point, defense counsel objected and the trial court sustained the objection for lack of foundation. Detective Marberry then testified that she discussed the accusations with petitioner and told him she wanted to hear his side.

> Q:     And yet you had tried to schedule a meeting with him for a whole month before he actually made it in to talk to you; is that correct?
>
> A:     Yes.

Resp. Ex. L at 243-44. Petitioner asserts that this testimony made it appear he was avoiding the police. He argues that counsel should have objected to or moved to exclude the testimony as inadmissible evidence of prior uncharged conduct of eluding.

As discussed above, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Strickland, 466 at 689. Defense counsel appropriately objected when Detective Marberry appeared to speculate whether petitioner knew why she wanted to interview him. A strategic decision not to make another objection and further highlight the damaging testimony is well within the range of reasonable assistance. Petitioner has failed to establish that he has a meritorious claim for relief based on ineffective assistance of counsel.

**Ground 12:** Petitioner contends that appellate counsel was ineffective for failing to argue on appeal that the trial court improperly denied his motion for a mistrial.

In his written statement, petitioner stated that he saw the victim with her hands in her underwear a number of times during the early part of the evening and that it made him uncomfortable. Resp. Ex. L at 252-55. After Detective Marberry

read the statement to the jury, the prosecutor stated: "So, according to what Mr. Greenlee wrote in his statement, the little girl was masturbating and then she —." Defense counsel objected and asked for a mistrial. At sidebar, defense counsel argued that the prosecutor had mischaracterized petitioner's statement and that the prejudice could not be cured. The trial court agreed that the prosecutor's characterization of the statement was incorrect but ruled that it was not so prejudicial as to require a mistrial. The court stated that it would sustain the defense objection "to that categorization of masturbation. And I can state it on the record, in front of the jury if you want me to. Or that might just draw more attention to it. But I am trying to do the . . . least damag[ing] correction I can do." At counsel's request, the court sustained the objection in open court. Id. at 256-57.

Petitioner cannot establish that a claim for mistrial would have succeeded on appeal. Under Missouri law,

> [a] mistrial is a drastic remedy to be exercised only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed. This decision is left to the discretion of the trial court, as it is in the best position to determine whether the incident had a prejudicial effect on the jury. Appellate review of a trial court's refusal to grant a mistrial is for an abuse of discretion. A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration.

State v. Ward, 242 S.W.3d 698, 704 (Mo. 2008) (citations omitted). There is no basis for concluding that the Missouri Court of Appeals would have determined that the trial court's decision not to grant a mistrial was "arbitrary and unreasonable." Petitioner is not entitled to relief on Ground 12.

**Ground 13:** Petitioner claims that counsel deprived him of his right to effective assistance of counsel during voir dire by asking the panel members whether they agreed that sexual abuse of a young child was "probably the worst crime" imaginable. Resp. Ex. L at 70. Counsel next asked whether they agreed that to be wrongly charged with or convicted of child abuse "would be one of the most horrendous things that could ever happen" to them. Finally, he asked whether any jurors would decide to relieve the State of its burden of proof because the victim was a young child, or would decide to "lean the child's way" or "not follow the evidence." Id. at 71. These questions were designed to elicit information about panel members' attitudes or biases and thus are a matter of trial strategy. Petitioner cannot overcome the strong presumption that the questions fall within the wide range of professionally reasonable assistance and thus has not presented a substantial claim if ineffective assistance.

**Ground 14:** Petitioner asserts that counsel failed to obtain evidence that his pretrial custody was unduly harsh to support his claim that his right to a speedy trial was violated. He argues that the trial court would have dismissed the indictment if such evidence had been presented.

As noted above, defense counsel moved to dismiss the indictment for violation of petitioner's rights to a speedy trial. In support, he asserted that petitioner had been beaten in jail and that two defense witnesses had become unavailable. Resp. Ex. A at 41-43; Resp. Ex. L at 10. During argument on the motion, defense counsel focused solely on the reasons for the delay. Resp. Ex. L at 9-14. The court denied the motion, implicitly finding that the delay could not be attributed to the prosecution. Thus, it is unlikely that evidence regarding pretrial

conditions would have altered the outcome. On appeal, the Court of Appeals stated that the most important consideration was the lack of evidence that petitioner's defense was impaired by the delay. <u>Greenlee</u>, 327 S.W.3d at 612 (possible impairment of the defense is the most serious and important consideration, because "[t]he inability of a defendant adequately to prepare his case skews the fairness of the entire system.") Again, additional evidence of harsh pretrial conditions alone would not have altered the outcome on appeal of this claim and the Court finds that petitioner has not presented a substantial claim that he was prejudiced by counsel's performance.

**Ground 15:** Before petitioner's first trial, the trial court granted counsel's motion for independent testing of the DNA found in the victim's underwear. Resp. Ex. A at 9. Petitioner asserts that counsel never obtained the tests because petitioner could not pay for them. He argues that counsel provided ineffective assistance by failing to either seek additional funds from the trial court or withdraw from the representation.

According to the evidence at trial, Shaminie Athinarayanan, a criminalist with the Missouri Highway Patrol, completed DNA analysis of a sample found on the victim's underwear. Resp. Ex. L at 281. She testified that she located DNA containing a Y chromosome contributed by a male. <u>Id.</u> at 285. The Y-profile she developed was consistent with a saliva sample provided by petitioner. <u>Id.</u> at 287. She explained that the profile would be expected less than 2.1 times in 1,000 individuals in the Caucasian population and less than 2.7 times in the Black population. <u>Id.</u>at 288. Petitioner claims that further analysis could have conclusively excluded petitioner as a match for the sample found in the victim's underwear.

"Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Harrington v. Richter, 562 U.S. 86, 107 (2011) (reversing Ninth Circuit's determination that trial counsel rendered ineffective assistance by failing to consult blood evidence experts). In this case, it was entirely reasonable for counsel to forego additional DNA testing because petitioner conceded in his written statement that his saliva was present in the victim's underwear. In light of this evidence, the results of any additional DNA testing would have been immaterial. Petitioner has not made a substantial claim that counsel's performance was ineffective.

**Ground 16:** Petitioner contends that counsel was ineffective for failing to object to the presence of the prosecutor's husband, who acted as the marshal for the trial court. With respect to Strickland's performance prong, petitioner argues counsel's failure to object was constitutionally deficient because he was aware of a "clear conflict and appearance of impropriety." With respect to the prejudice prong, petitioner argues that "on information and belief" the marshal was responsible for the jury, had access to them during deliberations, and influenced their decision. However, petitioner does not claim that the marshal made any statements or otherwise attempted to influence the jury.

Petitioner cites no cases holding that a *per se* violation of protected rights occurs when a prosecutor's relative acts as the courtroom marshal or bailiff. North Carolina has held that a criminal defendant's due process rights are prejudiced when "an immediate family member of . . . a prosecutor trying the case" serves "as custodian or officer in charge of the jury in a criminal case." State v. Wilson, 336

S.E.2d 76, 77 (N.C. 1985). However, the rule does not apply where the bailiff's contact with the jurors is brief, incidental, and without legal significance. <u>State v. Jeune</u>, 420 S.E.2d 406, 411 (N.C. 1992). To determine whether an immediate family member acted as a custodian or officer in charge of the jury, "we look to factual indicia of custody and control and not solely to the lawful authority to exercise such custody or control." <u>Id.</u> at 410 (<u>quoting</u> <u>State v. Mettrick</u>, 289 S.E.2d 354, 356 (1982)). Here, petitioner has presented no evidence that the marshal had custody and control of the jury and cannot establish that his due process rights were violated.

Petitioner also cannot establish that counsel's performance fell outside the wide range of professionally reasonable assistance. Counsel knew that the prosecuting attorney and marshal were married and he raised the issue in his motion for a new trial. Resp. Ex. A at 22 (arguing that the judge created the "false impression" that the judge and prosecutor were on the same team by introducing "my Court Marshal"). Petitioner does not attempt to rebut the strong presumption that counsel made a strategic decision not to raise the issue before trial. Furthermore, after trial, counsel asserted claims of juror misconduct and presumably would have raised a claim based on the marshal's interaction with the jury if he had evidence of such. Finally, three jurors testified during the post-trial hearing about their conduct in the jury room. At no time during this unusual and searching inquiry did any juror identify conduct by the marshal that suggested he was attempting to influence the verdict. Petitioner has not stated a substantial claim for ineffective assistance of trial counsel.

## V.     <u>Conclusion</u>

For the reasons discussed above, the Court concludes that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Petitioner has also failed to make a substantial showing of the denial of a constitutional right and the court will not issue a certificate of appealability. <u>See Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997).


_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 12th day of September, 2016.